A rating criteria which does not explicitly consider the effects of a disability as related to occupational impairment is inadequate as a matter of law because a rating criteria does not contemplate the veteran's total disability picture. In this case, dealing specifically with hearing loss, hearing loss under the rating criteria is gauged by a pure tone examination and a particular criteria is utilized by the VA that relies exclusively on the results of that testing. Before we get into that, can I just ask you a question about your second issue, the collective effects, the Johnson issue. Have you argued before the board or has Mr. Dedrick argued before the board that that issue is still alive? Well it's alive because of the remand. Because of the remand. Is the remand proceeding still alive? Oh yes, yes. It's ongoing. Well it's been deferred pending the outcome of these proceedings. Right, so then the Johnson issue can be raised in that proceeding. Oh yes, your honor, yes. As it relates to the back, but under Johnson now because of the remand. Combined, combined. Correct, yes. Because that case at our court had not been decided at the time of the CAVC decision here. That's correct, your honor. So in your view, the remand decision encompasses, embraces, considering Johnson? Well, that it would be required to, yes. Yes. Yes. Okay, that was, I wanted to get that cleared up. Clarified, certainly. And I'm sure the government will have its own view of whether that's the case or not too, but I wanted to get that cleared up and then we can move back to issues. But isn't the point though on your first issue, on your primary issue, that all of these ratings are supposed to reflect this loss of potential income? Well, your honor, we believe that they do and we believe that the government has, or the VA has done what it was mandated by Congress to do, and that is create a rating schedule that provides specific criteria for the average impairment. The problem with the way in which the VA has chosen to do it in the vast majority of its rating criteria is that it has explicitly excluded any consideration for occupational industrial impairment, explicitly. Now, in certain ones, ones that have been identified in the supplemental pleadings in this matter, the VA has, in fact, directly addressed those issues of how the disability picture affects the impairment of earnings in relationship to the varying markers or levels of disability for the purposes of assigning a rating. So is it your view that the mere fact that it's not mentioned means that it's explicitly excluded? Well, that it is explicitly omitted. It is the silence that renders the rating criteria for those that do not mention it inadequate as a matter of law under the criteria set out in 3.321B. Under the criteria of that regulation, that regulation contemplates that when a rating criteria is inadequate, then you will examine whether or not a market interference of employment has taken place based upon such things as frequent hospitalizations. Excuse me. Are you arguing that the VA has prohibited from considering employability concerns except in the four categories where it's explicitly been leveraged? Oh, no. No. To the contrary, Your Honor, they are required to consider it, and we believe that they... Well, aren't there many, many, many cases where extraschedular consideration has been granted where the diagnostic code hasn't made any mention of an employability problem? I would disagree with any suggestion that many cases have been done that way. That is part of the problem. If I went into a database and I looked to see how many instances there have been of there are more than one or two, right? It's not uncommon that a veteran will be afforded the benefit of 4.12 or whatever it is, extraschedular consideration. No, Your Honor. To the contrary, I believe it is uncommon, and it is uncommon because of needing to meet the threshold that exists in the language of 3.321, which is that the rating criteria must be determined to be inadequate before you can go to the next step. And it is that inadequacy of the rating criteria that's at issue in this case. Below, Mr. Dietrich argued to the Veterans Court that the very silence of the rating code as it relates to social... But doesn't this mean that for all veterans who are seeking benefits who are falling... problems fall under diagnostic codes other than the aforementioned, all will qualify for extraschedular consideration? No. They would meet the first threshold. They would be able to then assert and have the VA and the board examine whether or not there was a market interference with employment or there was a frequent hospitalization, which causes or requires the exceptional case to be considered for extraschedular purposes. You said before that you thought that the VA did what Congress directed it to do. Yes. But if that's the case, Section 1155 specifically states that they will adopt a schedule of rating, and then it says, rating shall be based as far as practical upon the average impairments of earning capacity resulting from such injuries in civil occupations. So by definition, each rating starts with the assumption that what they're supposed to be doing is to consider the reduction in earning capacity. Yes. And that's the point that we have conceded, that they in fact do that even in the rating schedule for hearings. But they do it in such a way that, if you will, it is only evident to them why the average impairment of earnings takes place. In other words, it is an objective measure that has been made by the VA independently. What is contemplated by 3.321 is the personalized or individualized subjective disability from the service-connected disability or disabilities that needs to be measured beyond what's in the rating code. And if the rating code provides no parameters for identifying what is the effect of the total disability by the veteran as a result of their service-connected condition, then there is no way for them to meet the initial criteria for entitlement to extra-schedule or consideration. That's the threshold. That's the step that the veteran has to demonstrate that the rating criteria is inadequate. You're saying that in everything except these four, the rating criteria is always inadequate even though the rating criteria by definition is supposed to encompass consideration? Yes, for purposes of the first step only. It does not grant or establish the entitlement to extra-schedule, but it requires the VA to consider whether there is or isn't market interference or whether there are frequent hospitalizations that require the assignment of an extra-schedule or rating based upon the subjective or individualized disability picture for that particular veteran. In other words, what the VA's rating schedule deals with is the average impairment for the That being the case, isn't it then the situation that the veteran is supposed to make a demonstration as to why the veteran falls outside the average? You say, for example, if it's me with my hearing loss and I'm faced with the diagnostic code that sets up this average norm and I say, gee, I'm more impaired than the average. That's correct. I come forward and I say my loss is particularly acute in the following respects. And I think the veteran, if I'm not mistaken, the veteran in this case did make that offer. Yes. And that offer was rejected. That's correct. If he had succeeded with that offer, then he would have gone past your step one, correct? Yes. And then help me understand what's missing. Was the veteran prejudiced here in any way? Well, he was. The veteran was given an opportunity to demonstrate why the average doesn't fit, correct? He made that proffer and when this matter was appealed to the Veterans Court, Mr. Dietrich explained to the Veterans Court that he was entitled to consideration that had been denied him. Does our law determine whether or not the question of whether or not his case presents facts that take him past the average? Is that a factual question? It feels like it. That would be a factual question, Your Honor. That would be something that would be up to the VA system through the CAVC to decide it would be beyond our authority. That would be correct, Your Honor. In this case, however, the lower court said that silence was not such a showing. And the legal argument here, silence being what? The absence of any reference to industrial impairment in the rating criteria for hearing loss. I understand that, but I'm still trying to get back to exactly how the VA operates under this system where the statute and the regulations say that all the diagnostic codes have embedded in them our consideration of the impact on employability, which is what it's all about. And so then the veteran has an opportunity in every case to come in and say, I recognize that there's an average out here, which makes sense, but I don't fit it. My case is more extreme than the average. And it puts forth the evidence about why the veteran feels that that's the case. And that evidence is considered. And if the evidence has merit to be decided in the VA system, the veteran then proceeds on to the possibility of having extra-schedular consideration. I'm saying, what's wrong with that system? There's nothing wrong with that system. What's wrong in this case is what the Veterans Court did by finding that Mr. Dietrich was not entitled as a matter of law to extra-schedule or consideration. The board said he was not. It is not based upon that factual criteria, but based upon whether or not the VA's rating schedule, by omitting any reference explicitly to occupational impairment, renders that regulation or rating code inadequate for purposes of triggering the consideration of extra-schedule. Isn't that really the point you're making? You're saying that the code is inadequate because there's nothing that the veteran can objectively measure against for knowing what the average impairment is and what it's not. And so because it's inadequate, we should just go past it. But are we allowed to question the adequacy of the underlying rating? You are not allowed to review the rating code. What you are allowed to review is the meaning of inadequate rating criteria under 3.321. That's the criteria here that the lower court said the silence of the code does not render it inadequate. That the veteran is supposed to offer something above that inadequacy or demonstrate it in some other way other than silence. We're asking, as a matter of law, does the silence make it inadequate as a matter of law? I'd like to hear from the government. Thank you. Ms. Jensen. Please, court. Mr. Diederich argues that the fact that the diagnostic code for hearing loss did not expressly include hearing occupational impairment, that it somehow automatically triggered the exceptional case provision of Section 3.321B1. However, both the statute and regulation plainly make clear that there are two considerations. Number one, is the case extraordinary? And does it present an extraordinary disability picture so that it renders the schedule of evaluation to be inadequate? Second, the veteran must also demonstrate a marked interference with employment or other related indicia, such as frequent periods of hospitalization. Here, the Veterans Court made a factual finding that none of Mr. Diederich's hearing loss symptoms were extraordinary or unusual. The problem is, though, how does the veteran know what could be deemed extraordinary or unusual if there's no objective measure of what the norm is? That's precisely why the veteran submits evidence. The average impairment is reflected in the diagnostic codes, whether it be through consideration directly of occupational impairment, which is only reflected in four of the diagnostic codes. There's also separate considerations, such as limitations in movement or sensory organs or a number of incapacitating episodes. These measures reflect how it indirectly affects the veteran's ability to work, but all the diagnostic codes, in one way or another, reflect the average impairment in earning capacity. So if the veteran submits additional evidence demonstrating that he has marked interference with employment or other such evidence, the board specifically considers that evidence and makes a determination whether it rises to the level of an extraordinary case. Section 3.321B1 is... You're not answering really my question. I think the heart of the argument here is, you keep talking about average and extraordinary and you say types of evidence, but we're not understanding what is average. If you say to me, I've got to prove that I'm better than the next person at something, but I don't know what the next person's capabilities are, how can I establish that? The average impairment is measured by the percentage evaluation. They have specific descriptions discussing, for example, for diabetes or for hearing loss, talk about the hearing loss, which is an issue in this case, they measure average impairment through pure tone decibels and speech discrimination. And that's an objective measure. They have a hearing test. Yes. And depending on how you score in the hearing test, the audiologist can say, you are failing to identify this percentage of words. Right. And I have hearing impairment, so I know how it works. Right. And so they say, well, the way the code is set up is that if you fall this rate on the test, they say you're missing about this percentage of what you're hearing, and then that correlates into the workplace of this amount of inability to do your work. Yes, absolutely. That interrelationship is key in through the test that's given. Right. And so even though for hearing loss, it's specifically measured through this objective audiometric testing result, the VA wrote the rating schedule in a way where the percentage ratings would reflect the veteran's impact on his earning capacity. But to the extent that Mr. Diedrich is attempting to challenge the way the VA has somehow written the code to reflect the average impairment and earning capacity. What is the code number that we're dealing with? It is 4.85. 4.85? 4.85. 38 CFR 4.85. So to the extent that Mr. Diedrich is challenging the manner in which the VA has written the code to provide an objective measure of average impairment and earning capacity, this court recently held in Wingard that the veteran's court and this court, they do not have the jurisdiction to review the way, the manner in which the code has been written. What's the maximum disability that you can have under here? 100%? Yes, 100%. Mr. Diedrich was rated at 10% only because the results of his biometric testing. Just helping with the rating. 10%, what is there, 20, 30, 40? Yes, all the way to 100. And those levels are keyed back into the test for exactly how much you are failing to hear. Right. Judgment has been made by someone that if you're missing this amount, you're about 10% reduced in workplace value, all the way to if you're totally deaf, it's 100%. Right. Here, Mr. Diedrich's four audiometric testing results resulted in the application of a 10% disability rating. He doesn't challenge that he is entitled to a higher percentage rating solely through 4.85. Rather, he implicates this extra scheduler consideration through 3.321, but that is reserved for exceptional cases where the scheduler evaluations are found to be inadequate. What's the practical effect of what's happening here? We talked a little earlier about what happened in this case. Assume that we were to rule in Mr. Carpenter's favor to say that there is this threshold place, and what's the impact? It sounds to me as if nothing would change from what happened in this particular case. We would say, well, the veteran gets a chance to come in and make his case. Or is Mr. Carpenter arguing that the entire schedule has to be thrown out and all of the diagnostic codes other than the four that we know about all have to be rewritten to place in them some specific criteria that is the equivalent of what is now there implicitly through the testing device? What do you think is going to happen if Mr. Carpenter's view prevails here? Well, certainly not the latter option because this court held in Wingard that this court doesn't have jurisdiction to review the manner in which the case is accounted for a disability. We're not supposed to be telling the VA how to write these codes. That's right. Just come back and tell me, what is the VA going to do if we accept Mr. Carpenter's legal, write it up in an opinion, and then I guess vacate and remand and send the case back? What happens? Well, if you accept Mr. Carpenter's interpretation, which is that occupational impairment is only inherently considered for the, I guess, the four specific diagnostic codes that mention it, then I guess the VA would be required under its consideration of all the other many, many disabilities to, I guess, consider that any time a veteran has submitted some evidence of economic impairment that he has satisfied the threshold inquiry as this court set forth and signed. But the threshold, according to Mr. Carpenter, only gets his client what he already got here, which is an opportunity to present evidence that he falls outside of this norm, however we've defined the norm. Right. I can't get my hands around what benefit there is to Mr. Carpenter's client in this case if we were to ruin his favor. Right. I mean, he's already submitted. I don't also understand what the VA is supposed to do. Right. So he's already submitted all the evidence of occupational impact that his hearing loss had on his employment. The Veterans Court has already considered all of this evidence, which is basically that he has difficulty with conversations, that he can no longer work as a heavy equipment operator, that he has to work in complete independence as a carpenter. The Board of Veterans Court already considered all this evidence and found, made a specific factual finding that it didn't amount to an extraordinary case that required application of extra scheduler consideration. But I think what Judge Clevenger's point is is they could reach that same conclusion even at step two if we found that when the rating doesn't expressly mention the employment activity or employability, that if we found that as a matter of law they pass the threshold, they still reach the same conclusion in this case, don't they? Yes. Why is it a big deal? I mean, the veteran still has to present the same evidence and the VA still gets to consider the same evidence for purposes of reaching the same conclusion. Right. So, I'm sorry, can you please explain? I sometimes have trouble in these cases understanding what it is we're being asked to do and what impact it will be on the system if we do it. Plus, I'm always concerned to know what will be the impact on the person that's in front of us, the veteran. Frequently, the veteran will get another hearing and something will prevail on its claim. But it seemed to me that that likely wasn't going to happen here. That's right, Your Honor. That Board of Veterans Corridor thoroughly considered the evidence. Mr. Carper has been very careful, which he is, to use his words very carefully, and he's been pointing out that this particular diagnostic code that we're talking about for hearing loss doesn't explicitly take into consideration employability concerns. He used the word explicitly several times. Right. And so what I would expect the government is trying to argue is that that may be the case, which it is, admittedly. In fact, there are only four codes out of hundreds of codes that explicitly refer to employability. But this one, which is what's in front of us, implicitly takes into consideration those things that Mr. Carpenter says is absent. Right. And it does it through the interrelationship between the kind of test that's being used to ascertain hearing loss and a judgment that's been made by the VA, which is the VA's to make and not ours or yours, as to what level of impairment will have a corresponding effect on employability. That's right, Your Honor. That's our position. Before you're done, can I ask you about the Johnson issue? Yes. Do you agree that it's still alive and well? Yes. Okay. It's before the board. The board will have an opportunity to conduct a combined effects analysis. And you've argued under Williams that that's not a final judgment for us on that issue. And Mr. Carpenter is nodding. He didn't respond in his reply brief. So I assume there's agreement that that issue is moved from the appeal. That's correct. To be clear, to make sure that I understand the government's position, this veteran says that because of the particular occupation which he was pursuing in construction, there were special circumstances. And what is the government's view, if you can summarize it quickly, as to whether special circumstances would be considered? As to extra scheduler considerations? Yes. For instance, the VA General Counsel opinion that Mr. Diederich cites in his brief presents one example in which extra scheduler consideration would be applied, which is if the scheduler, and we referenced it in footnote five of our brief, if the scheduler ratings for musculoskeletal disability are based solely on the range of motion but the evidence indicates that the claim is disability impairs earning capacity by frequent hospitalization or because medication required for that disability interferes with employment and may be necessary to address Section 3.321. So you're saying that is to be considered? In that circumstances, it may be necessary to address Section 3.321. I don't have here a lot, but I don't know if medication was necessary, but if Mr. Diederich were taking certain medications that affected his ability to work, then it may be necessary that the VA refer him for extra scheduler consideration. Okay. Thank you. Judge, I believe I either misspoke or you misunderstood what I said in response to your question. In the context of this regulation, the threshold question has to be answered in the affirmative, and the threshold question is whether or not the rating schedule is inadequate. In this case, the Board found that the rating schedule was adequate. The court below affirmed that the rating schedule was inadequate. What's at issue here... Why do you say it's inadequate? Because of the silence of the diagnostic code for hearing. Because it doesn't explicitly explain the correlation between hearing test and work impairment? That's right. And therefore, the rating schedule does not describe the total disability picture that a veteran would have, other than in terms of the results of the testing. In other words, all you get from this rating criteria is the results of testing. You know that when you go in and look and see how you scored on the test, you know whether you're somewhere between 0% and 100% work impairment. That's correct. Based on judgments made by audiologists, health experts, and the whole range of people who make those kind of judgments that happen in medicine all the time. And you ask the government whether or not there would be a difference if the position asserted by Mr. Dietrich was adopted, and there would be a difference because then as a matter of law, the finding of the... Back up for a second. So Mr. Dietrich should be able to come in and say that the science that went into determining that with my degree of hearing loss, I'm 10% impaired for social and employment availability. That's wrong. No. What Mr. Dietrich would say is that the rating schedule only relies upon that science and does not rely upon any other description of what renders a person... Any example of what some of that other information that is missing, that somebody overlooked a long time ago, what should be in there? It's not a question of whether the measurement is accurate, but whether or not the measurement reflects how a disability impacts an individual's earning capacity. What is determined in the rating schedule is how it impacts the average individual. You're saying that averages are impermissible. No, I am not. I am saying that averages are the criteria. No, Your Honor. The average is the expectation from Congress for the rating schedule. Congress did not write 3.321B. The VA wrote that in order to provide for when the schedule isn't adequate. The question of law here is what makes the schedule inadequate, and what makes the schedule inadequate... Why is your client prohibited from showing the inadequacy of the schedule? They say, my particular hearing loss, I realize I was tested and I fell at this particular level, but I'm taking some drugs, I'm taking some other things that the audiologist didn't know about that affect me and my ability to work and my home life. Because those issues don't go to the adequacy of the rating schedule. Those issues go to whether or not there is or isn't a market interference in his employment or he has frequent hospitalizations. Those are the triggering events that allow for extra scheduling. The problem with the rating schedule was it didn't take those considerations, particular to the individual, into consideration. That's correct. But my understanding is that the veteran always has the opportunity to present the circumstances peculiar to the individual to say, I'm different, I have these problems. With respect, Your Honor, he has the opportunity to present that, but those considerations are not considered until such time as there is a determination that the rating criteria is inadequate. How would the ruling, if we ruled in your favor on the point of law, Mr. Perkin, how would that benefit your client on the remand given the facts of the argument? It would benefit Mr. Dietrich in two ways. First, it would benefit him in relationship to what the appropriate rating should be for his hearing loss. Should the rating be something higher than 10%. Hasn't that already been judged? No, it has not. What additional evidence will he put in the record on the remand? It's not a question of what additional evidence he would put in, Your Honor. That evidence has not been considered as it relates to whether or not this is extraordinary circumstances. They have said that it is not an exceptional case. But the words of the BVA and the CBC say, yes, that's exactly what they considered, that he didn't present facts that qualify for an extraordinary circumstance. And that's the second prong of this regulation. Under Thun, this Court affirmed the lower court's interpretation and the VA's interpretation of this regulation that said that you have to meet the threshold requirement of establishing that the rating criteria is inadequate. That is the impediment to consideration of these particulars. And isn't essentially the evidence that would show that the rating criteria is inadequate the same evidence that you'd look at to see if there's a marked impairment? No, Your Honor, not in this case. What was argued below is that the silence of this rating code for hearing loss is per se evidence of inadequacy as a matter of law. Well, the four codes that you point to where there are explicit references, so we're no longer dealing with implicit consideration, we're talking about explicit consideration, they still do not provide the measurements, the detailed measurement against which you say your client could address his evidence. In other words, why wouldn't those codes, even where they expressly state that you're supposed to consider employability and impact on employability, why wouldn't those be equally inadequate in your review? Your Honor, as I mentioned, this Court affirmed in Thun the interpretation offered by the VA of their own regulation and said that the threshold consideration is that there must be a showing that the rating schedule is inadequate. If you don't show that the rating schedule is inadequate, you can't get to extra scheduler consideration. This is about whether or not, as a matter of law, when the VA made the choice to write more than 90% of its rating codes without the explicit reference to industrial impairment, does that make those rating codes meet the threshold under 3.321? Thank you very much, Your Honor. Thank you, Mr. Carpenter, and thank you, Ms. Anderson, for participating in this submission.